UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DENISE HANKINS, | CASE NO. 1:16-cv-01046-LJO-MJS |
| Plaintiff, | MEMORANDUM DECISION AND ORDER GRANTING DEFENDANT AMERICAN MEDICAL RESPONSE AMBULANCE SERVICE INC.'S MOTION FOR SUMMARY JUDGMENT |
| v. | |
| AMERICAN MEDICAL RESPONSE AMBULANCE SERVICE, INC.; THERESA FOLETTA, ANDREA WISNIESKI, JARED BAGWELL; and DOES 1 through 50, inclusive, | ECF No. 16 |
| Defendants. | |

# I. **INTRODUCTION**

Plaintiff Denise Hankins ("Hankins" or "Plaintiff") brings this action against Defendants American Medical Response Ambulance Service, Inc. ("AMR" or "Defendant"), Theresa Foletta, Andrea Wisnieski, Jared Bagwell (the "Individual Defendants")[1], and Does 1 through 50 (collectively, "Defendants"), alleging employment discrimination based on medical condition, wrongful demotion in violation of public policy, and negligent supervision. (Complaint ("Compl."), ECF No. 1-1.) Now before the Court is Defendant AMR's motion for summary judgment. This matter is suitable for disposition without oral argument. *See* Local Rule 230(g).

---

[1] The Individual Defendants named in this case have never been served. (ECF No. 1, ¶ 31.)

1

## II. FACTUAL BACKGROUND

During the relevant period, Plaintiff Hankins was a paramedic employed by Defendant AMR. (ECF No. 35 at 3, Plaintiff's Undisputed Material Facts ("PUMF")[2] No. 1.) On June 11, 2012, Plaintiff suffered an injury to her right hand while lifting and moving a gurney through a patient's doorway. (Defendant's Statement of Undisputed Facts ("DUMF") No. 1, ECF No. 29-1.) Plaintiff's hand was smashed between the gurney and the door seal causing immediate severe injury and pain in her right hand. (DUMF No. 1) That same day (June 11, 2012), Plaintiff was examined by a physician, diagnosed with a right-hand contusion and fracture, and restricted by the treating physician from using her right hand. (Fears Decl. ¶ 30, Ex. BB.) Because of the June 2012 injury, Hankins was placed on light duty and temporarily reassigned. (PUMF No. 5.)

Following the injury, Plaintiff experienced pain in her right hand in the form of "flare-ups" that interfered with the use of that hand. As Plaintiff testified in her deposition, when she was experiencing this severe pain, she avoided use of her right hand entirely. (ECF Nos. 23-1, 23-10, Deposition of Denise Hankins ("Hankins Dep.") 138:22-140:4; 224:6-225:7.) Plaintiff filed a claim before the Workers' Compensation Appeals Board, WCAB No. ADJ8519933 and WCAB No. ADJ9096158. (DUMF No. 62.)

On September 10, 2012, Plaintiff was examined by a physician, and placed off work until October 10, 2012. That same day, Plaintiff requested, and was granted, a 30-day leave of absence. (Fears Decl. ¶ 31, Ex. CC.) On October 4, 2012, Plaintiff was again examined by a physician, and placed off work until December 1, 2012. AMR extended Plaintiff's leave of absence. (*Id.* ¶ 32, Ex. DD.) On November 19, 2012, Plaintiff was again examined by a physician, and placed off work until January 2013. AMR again extended Plaintiff's leave of absence. (*Id.* ¶ 33, Ex. EE.) In early 2013, Plaintiff returned from her leave of absence. (Hankins Dep. 242:14-16.) In or about May 2013, Hankins notified

---

[2] Defendant and Plaintiff each submitted statements of undisputed material facts to which the other party responded. (*See* ECF Nos. 29, 35.) The Court only refers to these facts to the extent that the opposing party did not dispute a particular fact's accuracy.

AMR management that her injury and disability might require accommodation. (PUMF No. 7.)

On May 21, 2013, Plaintiff was examined by a physician and placed on restrictions prohibiting (1) "prolonged or repetitive use of right hand" and (2) lifting "more than 20 pounds." (Hankins Dep. 134:14-135:14; Fears Decl. Ex. H.) On June 10, 2013, Plaintiff was examined by physician Dr. Robson as part of a Qualified Medical Exam ("QME") for the purposes of assessing her workers' compensation claim. (Hankins Depo., 195:12-21; Fears Decl. Ex. I.) The resulting report assessed Plaintiff's functional work capacities, and determined that Plaintiff retained, with limitations, the ability to lift 50 or more pounds occasionally and 20 pounds frequently. (Fears Decl. Ex. I at 13.) The report further concluded that Plaintiff could "return to her usual occupation." (*Id.*) However, the report noted that when Plaintiff was experiencing a "flare-up" she would be unable to "push even a pencil across the paper, [let] alone move 50 pounds." (*Id.*)

On July 3, 2013, Plaintiff met with AMR to discuss potential accommodations. Hankins offered the following accommodations during this meeting: (1) placement in a Quick Response Vehicle ("QRV") Unit position; (2) intermittent FMLA leave; (3) use of an electric gurney; (4) allowing her partner's EMT position to be filled with a paramedic when her partner was not working; (5) allowing extra time in the hospital to complete paperwork; (6) providing commonly available speech recognition technology and ergonomic workstation; (7) allowing return to operation center for use of a TENS units and heating pad on an intermittent basis during pain flare-ups; (8) providing lift assistance as needed; (9) permitting two-person load/unload of gurney; (10) providing occasional breaks for stretching and exercise to alleviate pain; and (11) allowing her to do training assignments for other employees. (Hankins Decl. ¶ 25.) Plaintiff testified at her deposition that AMR rejected Plaintiff's suggested accommodations. (Hankins Dep. 250:8-17.) Hankins also provided AMR with a copy of the June 10 QME report that indicated she could return to work. (DUMF No. 17.)

On July 11, 2013, Theresa Foletta ("Foletta") sent a letter to Plaintiff advising her (1) that the June 10, 2013 QME report indicated that she could not safely lift/transport patients, and (2) that she

would be placed on a leave of absence while AMR obtained clarification regarding the medical restrictions in the QME report. (DUMF No. 18; Foletta Decl. ¶ 16, Ex. N.) On August 12, 2013, Dr. Robson issued a supplemental report that indicated that "if . . . [Hankins] has persistent pain, no, she cannot go back to work and I do not recommend that." (Foletta Decl. ¶ 16, Ex. N.) As a result of the report, AMR kept Hankins on a leave of absence.

On January 27, 2014, Plaintiff was examined as part of a final QME. Dr. Robson issued a "QME Final Report," in which he stated that Plaintiff's condition was "permanent and stationary." (Foletta Decl. ¶ 18, Ex. P at 7.) He further explained that Plaintiff could not "lift 75 pounds using both the hands going up the flight of stairs backwards and down the flight of stairs backwards" and therefore could not pass the paramedic test requirements. (*Id.*)

Following the Final QME Report, on February 13, 2014, Plaintiff submitted an internal transfer request in which she sought a transfer a position as a Dispatch Associate, a lower paying position. (DUMF No. 47; ECF No. 4, Declaration of Theresa Foletta in Support of Removal, ¶ 6.) AMR offered Plaintiff a position as a dispatch associate., which she accepted on March 3, 2014. (DUMF No. 48; Foletta Decl. ¶ 21, Ex. S.) The parties in Plaintiff's workers' compensation case reached a settlement in early 2016, and filed a request for award, which was granted by the WCAB. (Fears Supp. Decl. Ex. FF; Hankins Dep., 260:15-261:11.)

### III. PROCEDURAL BACKGROUND AND JURISDICTION

Plaintiff filed suit in Kern County Superior Court on June 18, 2015, alleging disability discrimination based on medical condition under California law (first cause of action), wrongful demotion in violation of public policy under California state law (second cause of action), and negligent supervision under California state law (third cause of action). (*See* Compl.)

Defendant AMR removed the case to federal court on the grounds that the suit met the

requirements for diversity jurisdiction under 28 U.S.C. §§ 1332, 1446.[3] The requirements for diversity jurisdiction are: 1) complete diversity of citizenship between plaintiffs and defendants, and 2) an amount of controversy in excess of $75,000. 28 U.S.C. § 1332; *see also Matheson v. Progressive Specialty Ins., Co.*, 319 F.3d 1089, 1090 (9th Cir. 2003) ("[J]urisdiction founded on [diversity] requires that the parties be in complete diversity and the amount in controversy exceed $75,000").

AMR is a citizen of Colorado and Delaware, and Plaintiff is a citizen of California. Defendant argues in its removal notice that the other Individual Defendants, all citizens of California, are sham defendants.[4] Here, all three Individual Defendants are named as defendants only in the first cause of action – disability discrimination based on medical condition. (Compl. ¶¶ 22-33.) In the Ninth Circuit, a non-diverse defendant is deemed a sham, and will not defeat jurisdiction, "if a plaintiff fails to state a cause of action against a resident defendant, and the failure is obvious according to the well-settled rules of the state." *United Computer Sys., Inc. v. AT & T Corp.*, 298 F.3d 756, 761 (9th Cir. 2002); *see also Morris v. Princess Cruises, Inc.*, 236 F.3d 1061, 1067 (9th Cir. 2001) (a non-diverse party named in the state court action may be disregarded if the federal court determines that the party's joinder is a "sham" or "fraudulent" so that no possible cause of action can be pursued against that party).

Plaintiff's retaliation claim, under California Government Code § 12940, is asserted against the Individual Defendants (in addition to AMR). (*See* Compl. ¶ 24 ("[t]he individual defendants are sued individually for harassment and retaliation only and not for discrimination.").) However, it is well-established that only an employer can be sued for retaliation under the Fair Housing and Employment Act ("FEHA"). *Jones v. Lodge at Torrey Pines P'ship*, 42 Cal. 4th 1158, 1160 (2008) ("We conclude

---

[3] Defendant also argues in its removal notice that this Court has federal question jurisdiction over this case, noting that this case arises under the laws of the United States because Plaintiff's claims arise from a collective bargaining agreement and are therefore preempted by Section 301 of Labor Management Relations Act. Because the Court concludes that the requirements for diversity jurisdiction are met, the Court need not address whether it has federal question jurisdiction as well.

[4] The Court notes that Plaintiff concedes that federal jurisdiction is proper. (ECF No. 10 at 2.) However, the Court still has an independent obligation to assess its jurisdiction *sua sponte*. *See Demery v. Kupperman*, 735 F.2d 1139, 1149 n.8 (9th Cir. 1984) ("Even when neither party has raised an objection to a federal court's subject-matter jurisdiction, the court has an obligation to consider the issue *sua sponte*, and to consider it fully.").

that the same rule applies to actions for retaliation that applies to actions for discrimination: The employer, but not non-employer individuals, may be held liable."). Therefore, Plaintiff does not state a retaliation claim against Individual Defendants.

Although individuals may be liable for workplace harassment, *id.* at 1162-63, Plaintiff does not allege in the Complaint, or present any evidence to establish, that any Individual Defendants is liable for harassment. To prevail on a claim for harassment based on disability, Plaintiff must establish that: 1) she belongs to a protected group; (2) she was subjected to unwelcome harassment on the basis of her disability; and (3) that the harassment was sufficiently severe and pervasive so as to alter the conditions of employment and create an abusive working environment. *See Fisher v. San Pedro Peninsula Hosp.*, 214 Cal. App. 3d 590, 608 (1989). Plaintiff offers absolutely no facts connecting any of the Individual Defendants to any harassment claim in her Complaint or her separate statements of facts. She alleges in the Complaint only that she met with Individual Defendant Theresa Foletta on July 3, 2013, and that she "was told at that time that AMR would not let her return to an ambulance." (Compl. ¶ 12.) Plaintiff sets forth neither evidence, nor even allegations in the Complaint, to support an inference that Individual Defendants Wisnieski or Bagwell harassed her. Plaintiff does not set forth evidence to establish, even on a basic level, that ant any of the Individual Defendants subjected her to unwelcome harassment on the basis of her disability. *See Amarant v. Home Depot U.S.A., Inc.*, No. 1:13-CV-00245-LJO-SK, 2013 WL 3146809, at *10 n.2 (E.D. Cal. June 18, 2013); *Kehoe v. Aurora Loan Servs. LLC*, No. 3:10-CV-00256-RCJ, 2010 WL 4286331, at *3 (D. Nev. Oct. 20, 2010). Individual Defendants meet the legal definition of sham defendants and therefore do not defeat complete diversity.[5]

As to the second prong, amount in controversy, the Court is satisfied that the amount in controversy exceeds the jurisdictional minimum of $75,000. Here, Plaintiff seeks to recover (1) "general

---

[5] Moreover, the Ninth Circuit concluded in an unpublished opinion that a plaintiff's failure to contest allegations in a removal notice that defendants were fraudulently joined constituted a constructive admission that defendants were sham defendants joined solely to destroy diversity. *Caswell v. Olympic Pipeline Co.*, 484 F. App'x 151, 153 (9th Cir. 2012). Here, Plaintiff did not contest Defendant's position in its removal order that the Individual Defendants were sham defendants.

and compensatory damages" (Complaint, Prayer); (2) "special and economic damages, including … back pay, front pay, . . . lost wages, earning, benefits, and other pecuniary compensation" (Complaint, Prayer); (3) "punitive or exemplary damages" (Complaint, Prayer); (4) reasonable attorneys' fees (Complaint, Prayer); and (5) costs of suit (Complaint, Prayer).

As Defendant AMR indicates in its removal notice, Plaintiff's damages in each of these categories potentially amounts to tens of thousands of dollars, bringing the total to well over $75,000. For instance, in employment discrimination cases alleging similar harassment and retaliation claims, emotional distress damages alone often well exceed $75,000. *See McCarthy v. R.J. Reynolds Tobacco Co.*, No. CIV. 2:09-2495 WBS, 2011 WL 4006634, at *6 (E.D. Cal. Sept. 8, 2011) (jury awarded two plaintiffs $150,000 each in compensatory damages and $250,000 in punitive damages in connection with their harassment and retaliation claims ,awards subsequently reduced by trial court to $100,000 each in compensatory damages and $200,000 each in punitive damages); *Sornia v. El Centro Elementary School District*, 285 F. App'x 337 (9th Cir. 2008), (affirming award of $400,000 in emotional distress damages and $32,500 in punitive damages in employment action alleging harassment); *Bradley v. Department of Corrections & Rehabilitation*, 158 Cal. App. 4th 1612, 1618 (2008) (affirming award of $300,000 in non-economic damages to single plaintiff for harassment claim).

Similarly, Defendant also lists a number of cases where juries have awarded punitive damages over the jurisdictional limit in employment discrimination cases. (ECF No. 1 at 16-18). The Court concludes that Defendant has demonstrated by a preponderance of the evidence that the amount in controversy exceeds $75,000. Because both prongs of the diversity jurisdiction analysis are satisfied, the Court concludes that it has jurisdiction over this case pursuant to 28 U.S.C. § 1332.

Defendant filed a motion for summary judgment on September 19, 2017, (ECF No. 16). Plaintiff filed an opposition on November 21, 2017. (ECF No. 29.) Defendant filed a reply on November 28,

2017. (ECF No. 20.)[6] Venue is proper in this Court and the matter is ripe for review.

## IV. <u>STANDARD OF DECISION</u>

Summary judgment is proper if the movant shows "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial burden of "informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (internal quotation marks omitted). A fact is material if it could affect the outcome of the suit under the governing substantive law; "irrelevant" or "unnecessary" factual disputes will not be counted. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

If the moving party would bear the burden of proof on an issue at trial, that party must "affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party." *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007). In contrast, if the non-moving party bears the burden of proof on an issue, the moving party can prevail by "merely pointing out that there is an absence of evidence" to support the non-moving party's case. *Id.* When the moving party meets its burden, the non-moving party must demonstrate that there are genuine disputes as to material facts by either:

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

---

[6] Defendant requested permission to file an over-length reply brief, citing the fact that Plaintiff raised new claims in her opposition brief. (ECF No. 31.) That motion is GRANTED for good cause shown. The Court has considered Defendant's reply brief in its entirety, as filed.

Fed. R. Civ. P. 56(c)(1).

In ruling on a motion for summary judgment, a court does not make credibility determinations or weigh evidence. *See Anderson*, 477 U.S. at 255. Rather, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* Only admissible evidence may be considered in deciding a motion for summary judgment. Fed. R. Civ. P. 56(c)(2). "Conclusory, speculative testimony in affidavits and moving papers is insufficient to raise genuine issues of fact and defeat summary judgment." *Soremekun*, 509 F.3d at 984.

# V. ANALYSIS

## A. First Cause of Action: Discrimination under FEHA

### 1. Medical Condition

Defendant first argues that Plaintiff's first cause of action fails as a matter of law because Plaintiff did not suffer from a medical condition as defined by FEHA, and therefore cannot state a claim for disability discrimination for a "medical condition." *See* Cal. Gov't Code § 12926(i). A "medical condition" under FEHA is defined as "(1) [a]ny health impairment related to or associated with a diagnosis of cancer or a record or history of cancer" or 'genetic characteristics' such as chromosomal diseases or inherited characteristics causing a disease or disorder." *Id.* Plaintiff does not address this argument directly, but instead argues that she has pled a prima facie case of physical disability discrimination under § 12940(a) & (n). A physical disability includes "any physiological disease, disorder, condition, cosmetic disfigurement, or anatomical loss" that both affects one or more of the body's major systems and limits a major life activity. Cal. Gov't Code § 12926(m).

Plaintiff labels her first cause of action "Employment Discrimination Based on Medical Condition – State" in the Complaint, and refers throughout to being subjected to "medical condition discrimination." (Compl. at 8-10.) Defendant is correct that Plaintiff's injury does not fall within the narrow definition of a "medical condition" under § 12926(i). Plaintiff does not allege that she was

discriminated against on the basis of a cancer diagnosis, history of cancer, or a genetic disease or disorder. Plaintiff does not state a claim for medical condition discrimination under California law. However, Plaintiff describes the injury to her right hand throughout the Complaint, making it clear that she does suffer from a disability as defined by the statute. Plaintiff alleges that she has a serious condition in her right hand that affects her muscoskeletal and nervous systems and interferes with her ability to work, which is a major life activity under § 12926(m)(1)(B)(iii). (Compl. ¶ 11.)

The Court is not inclined to construe Plaintiff's Complaint narrowly based on the labels that Plaintiff assigns to the factual claims that she alleges. "Notice pleading requires the plaintiff to set forth in his complaint *claims for relief,* not causes of action, statutes or legal theories." *Alvarez v. Hill*, 518 F.3d 1152, 1157 (9th Cir. 2008) (emphasis in original); *see also Measurement Specialties, Inc. v. Taylor Precision Prod., L.P.*, 131 F. Supp. 2d 982, 985 (N.D. Ill. 2001) (notice pleading "requires no special formulae or magic words: indeed, the whole point of notice pleading was to get away from the baroque 'dance of the pleadings' that had burdened the old common law and impeded litigation on the merits").

Defendant cites *Soria v. Univision Radio Los Angeles Inc.*, 5 Cal. App. 5th 570, 584 (2016), for the proposition that Plaintiff did not adequately plead a medical condition. In *Soria*, the plaintiff alleges disability discrimination, asserting that she was discriminated against for having a stomach tumor. *Id.* at 588. She did not allege that the tumor was cancerous. *Id.* at 585-86. After attempting to assert a medical condition claim for the first time in her summary judgment opposition, and again on appeal, the court concluded plaintiff failed to plead a medical condition sufficient to put defendant on notice that she was asserting a separate claim for medical condition discrimination based on a cancer diagnosis. *Id.* at 585-86. Plaintiff did not allege the factual predicates for a medical condition complaint. *Id.* at 585-86 ("the first amended complaint does not mention cancer, let alone contain any allegation that Soria had received a diagnosis of cancer"). Here, by contrast, Plaintiff does set forth factual allegations that meet the statutory definition of a physical disability in the Complaint. (*See* Compl. ¶ 11.) *Soria* is inapposite.

Defendant also cites *Muller v. Auto. Club of S. Cal.*, in which the court concluded that plaintiff's

allegation of temporary stress disorder did not fit the definition of either a "mental disability" or a "medical condition" within the meaning of California Government Code §§ 12926 and 12940 and therefore that she did not state a claim. 61 Cal. App. 4th 431 (1998), *disapproved of on other grounds by Colmenares v. Braemar Country Club, Inc.*, 29 Cal. 4th 1019 (2003). In *Muller*, the court concluded that plaintiff's ailment – a stress disorder – did not qualify her as a member of any protected group under the statute. 61 Cal. App. 4th at 440-44. Here, by contrast, Plaintiff does allege a physical disability within the meaning of the statute, even if she mislabels it.

Plaintiff had a condition in her hand that resulted in a disability. Defendant was on notice of Plaintiff's injury and the resulting disability, and was on notice of the disability claim based on the factual allegations in the Complaint. Under Rule 8, the allegations of disability discrimination were sufficient to put Defendant AMR on notice, even if the Complaint erroneously refers to the disability as a medical condition. The Court declines to enter judgment against Plaintiff based on Plaintiff's labeling error.

## 2.  **Exhaustion**

Relatedly, Defendant argues that Plaintiff has failed to exhaust her administrative remedies with respect to any physical disability discrimination claim because, in her DFEH Complaint, she checked boxes indicating that she experienced discrimination, harassment, and retaliation for "medical condition" and "family, care, or medical leave," but not for "disability." Under state law, "the test for whether a complaint about one discriminatory act will exhaust remedies for another discriminatory act is whether the act complained of is 'like or related to' the unidentified act." *Dyer-Washington v. Permanente Med. Grp.*, No. C 97-3909-CRB, 1998 WL 898469, at *2 (N.D. Cal. Dec. 18, 1998) (citing *Soldinger v. Northwest Airlines, Inc.*, 51 Cal.App.4th 345, 380-81 (1996)). As the *Soldinger* court explained:

> [A] DFEH charge "is not intended as a limiting device." . . . Incidents not
> described in a DFEH charge can be included in the subsequently filed
> lawsuit if they would necessarily have been discovered by investigation of

the charged incidents, i.e., if the allegations in the civil complaint were "like or related" to those specified in the DFEH charge . . . .

"Essentially, if an investigation of what was charged in the [administrative agency filing] would necessarily uncover other incidents that were not charged, the latter incidents could be included in a subsequent [civil] action."

51 Cal. App. 4th at 380 (internal citations omitted).

Here, Plaintiff's "medical condition" complaint meets the test for exhaustion of her disability claim. The medical condition to which Plaintiff was referring in her administrative complaint was the injury to her right hand. This injury is also the source of her disability claim. Although the definition of medical condition under FEHA is exacting, in colloquial terms Plaintiff indeed had a medical condition which was the source of her disability. Defendant was on notice of the nature of the alleged discrimination based on Plaintiff's administrative medical condition complaint. *Dyer-Washington*, 1998 WL 898469, at *2 (finding that plaintiff exhausted administrative remedies for disability discrimination where she alleged medical condition discrimination in her FEHA administrative complaint, noting that "it appears [plaintiff] confused medical condition discrimination with disability discrimination"). Any investigation of the FEHA administrative complaint would have been based on the same facts that are relevant to the instant disability discrimination action. *See id.* at *2-3 ("This is not the situation where a plaintiff alleges sex discrimination and then files a lawsuit for disability discrimination."). Accordingly, the Court concludes that Plaintiff exhausted her administrative remedies.

### 3.   Preemption

Defendant argues that Plaintiff's discrimination claim is preempted by California's Workers' Compensation Act, which is the exclusive remedy for violations of California Labor Code § 132a, citing *Rund v. Charter Commc'ns, Inc.*, No. CIV.S0500502FCDGGH, 2007 WL 852035, at *10 (E.D. Cal. Mar. 20, 2007), *aff'd*, 319 F. App'x 465 (9th Cir. 2008). California Labor Code § 132a prohibits discrimination against workers who file workers compensation claims. However, *Rund* makes clear that while the Workers' Compensation Appeals Board ("WCAB") is the exclusive forum for claims brought

under Section 132a, it is equally clear that Section 132a and the WCAB is *not* an exclusive remedy for a plaintiff bringing a cause of action for disability discrimination. *Id.* ("Consequently, plaintiff may bring claims outside of Section 132a which are related to his allegation of disability discrimination, but a claim under Section 132a is only allowable before the Workers Compensation Appeals Board."). Here, Plaintiff brings a disability discrimination claim under California Government Code § 12940(a). That claim is not preempted. *Id.*

### 4. <u>Judicial Estoppel</u>

Defendant argues that Plaintiff is judicially estopped by her workers' compensation settlement from claiming that she was physically able to perform her paramedic duties.

Judicial estoppel is an equitable doctrine that precludes a party from gaining an advantage by asserting one position, and then later seeking an advantage by taking a clearly inconsistent position. *Rissetto v. Plumbers & Steamfitters Local 343*, 94 F.3d 597, 600-01 (9th Cir. 1996). Judicial estoppel not only prevents a party from gaining an advantage by taking inconsistent positions, but also provides for the orderly administration of justice and regard for the dignity of judicial proceedings. *Hamilton v. State Farm Fire & Cas. Co.*, 270 F.3d 778, 782 (9th Cir. 2001). The application of judicial estoppel is not limited to bar the assertion of inconsistent positions in the same litigation, but is also appropriate to bar parties from making incompatible statements in two different cases. *Id.*

"Federal law governs the application of judicial estoppel in federal courts." *Johnson v. Oregon*, 141 F.3d 1361, 1364 (9th Cir. 1998). The Supreme Court held that although there is no simple formula that can be applied to decide if judicial estoppel applies, there are several factors are to be considered. *New Hampshire v. Maine*, 532 U.S. 742, 750 (2001).

> First, a party's later position must be clearly inconsistent with its earlier position . . . . Second, courts regularly inquire whether the party has succeeded in persuading a court to accept that party's earlier position, so that judicial acceptance of an inconsistent position in a later proceeding would create the perception that either the first or the second court was misled. Absent success in a prior proceeding, a party's later inconsistent position introduces no risk of inconsistent court determinations . . . and

thus poses little threat to judicial integrity. . . . A third consideration is whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped.

*Id.* at 750–751 (citations and quotation marks omitted). The Ninth Circuit held that a settlement with the WCAB was akin to winning a judgement, and thus any statements made as part of a workers' compensation claim could be considered a statement in a successful preceding case for the purposes of judicial estoppel. *Rissetto*, 94 F.3d at 604-05. Plaintiff obtained a favorable settlement in her workers' compensation claim. (Fears Supp. Decl. Exs. FF, KK.) Therefore, the second judicial estoppel factor is established here.

With respect to the first factor, the Ninth Circuit has rejected a per se rule of applying judicial estoppel to bar inconsistent statements. *Fredenburg v. Contra Costa Cnty. Dep't of Health Serv.*, 172 F.3d 1176, 1179 (9th Cir. 1999). In *Fredenburg,* the Court held, "although we acknowledged that estoppel might be appropriate when the inconsistency of statements and positions was so blatant as to demonstrate that a claimant is playing fast and loose with the courts, our clear preference was that inconsistent statements simply be considered along with other evidence to see whether they were so damaging that no rational trier of fact could rule in the [party's] favor." *Id.* (internal citations and quotations omitted). In the case at hand, Defendant has not met its burden of proving that the position the opposing party took as part of the workers' compensation claim was "clearly inconsistent" with the position they now assert.[7]

First, as the Division of Workers' Compensation fact sheet indicates, "[p]ermanent disability is any lasting disability from your work injury or illness that affects your ability to earn a living. If your injury or illness results in [permanent disability] you are entitled to [personal disability] benefits, *even if*

---

[7] Defendant raises the issue of judicial estoppel for the first time in their reply brief. Generally, a court does not need to consider facts or arguments raised for the first time in a reply brief. *See Zamani v. Carnes*, 491 F.3d 990, 997 (9th Cir. 2007) ("The district court need not consider arguments raised for the first time in a reply brief."). Although the Court addresses substance of the argument here and concludes that Defendant has not met its burden, the fact that this issue was raised for the first time on reply, depriving Plaintiff of an opportunity to respond, further militates against finding that Plaintiff is judicially estopped from asserting her disability claim.

14

*you are able to go back to work.*" (ECF No. 34-6, Fears Supp. Decl. Ex. KK at 25 (emphasis added).) In other words, Plaintiff could be entitled to workers' compensation at one point due to a workplace injury, and still be able to return to work at a later time. Therefore, being declared permanently disabled through the workers' compensation process does not *necessarily* mean that Plaintiff was unable to perform the essential functions of her job at some point.

In *August v. Provident Life & Acc. Ins. Co.*, 772 F. Supp. 2d 1197, 1205 (C.D. Cal. 2011), the Court found that a person was not judicially estopped from claiming complete disability under workers' compensation while at the same time maintaining that he was fired in violation of the Americans with Disabilities Act. Recognizing that medical claims are complex and often rely on a variety of factor, the Court reasoned that, "[d]efendant's evidence is insufficient to satisfy its burden of showing that Plaintiff's position concerning his workers' compensation claim, in the situation here where his employer concluded he could not do his job, is tantamount to committing fraud on the court." *Id.*

Similarly, in *Fredenburg*, the district court held that plaintiff was bound by her representation to the state agency that she was disabled and incapable of doing regular work such that she could not claim to be a qualified individual under the ADA. 172 F.3d at 1179. The Ninth Circuit reversed, noting that "it is possible, due to the different definitions of disability employed by various agencies, to qualify for disability benefits and to satisfy the ADA's definition of a qualified person with a disability." *Id.* (citation omitted). The Court concluded that some inconsistencies in a worker's position did not necessarily indicate that she was "playing fast and loose with, or committing fraud on, the court." *Id.* at 1179-80 ("Her employer concluded that she could not perform her job, and placed her on unpaid leave. She disagreed with her employer's determination and unsuccessfully challenged it. Then, without pay because of her asserted disability, she applied for temporary disability benefits and received them. What else was she to do?").

Plaintiff relies heavily on *Rissetto*, where the Ninth Circuit concluded that a recipient of California disability benefits was estopped from bringing a FEHA claim because she had claimed to be

temporarily totally disabled in workers' compensation proceedings. 94 F.3d at 601. However, after *Rissetto* was decided, the Supreme Court curtailed the use of judicial estoppel in *Cleveland v. Policy Mgmt Sys. Corp.*, 526 U.S. 795 (1999). In that case, the Court concluded that a plaintiff who received Social Security disability benefits was not estopped from claiming in ADA litigation that she could perform the essential functions of her job with reasonable accommodation, because the Social Security Administration did not consider the possibility of reasonable accommodation in adjudicating her disability benefits claim. *Id.* at 803. The Court noted that the issue of reasonable accommodation "may turn on highly disputed workplace-specific matters" that the Social Security Administration would be ill-equipped to assess, in light of all the benefits applications it must process. *Id.* After *Rissetto* was decided, the Ninth Circuit rejected a per se rule of judicial estoppel in cases involving parallel requests for disability benefits and civil suits for discrimination in *Johnson*, 141 F.3d at 1364 and *Fredenburg*, 172 F.3d at 1179.

Here, Defendant has not met its burden of showing that the WCAB considered whether Plaintiff could perform the essential functions of her job with reasonable accommodation in awarding her workers' compensation benefits. *See Stoll v. The Hartford*, No. 05CV1907 IEG (LSP), 2006 WL 3955826, at *11 & n.15 (S.D. Cal. Nov. 7, 2006). Therefore, Plaintiff's argument here, that she could perform the essential functions of her job *with* accommodation, is not necessarily inconsistent with the claim that she was unable to do her job due to her workplace injury. Defendant certainly has not submitted sufficient evidence to show that discrepancies between Plaintiff's representations in her workers' compensation claim and this disability claim amount to fraud on the court. Therefore the Court rejects the application of judicial estoppel.[8]

---

[8] Although the Court does not find application of judicial estoppel to be appropriate under the circumstances, Plaintiff's claim of permanent disability and the supporting evidence introduced in her workers' compensation claim are still relevant to the analysis of whether she has established a *prima facie* case for disability discrimination. Therefore, the Court will consider that evidence in determining whether Plaintiff is a qualified individual under FEHA. *See Kennedy v. Applause, Inc.*, 90 F.3d 1477, 1480-82 (9th Cir. 1996) (no reasonable fact-finder could conclude that plaintiff could perform essential functions of position where plaintiff stated on disability forms and doctor testified that plaintiff was totally disabled from working).

### 5. **Prima Facie Case of Disability Discrimination**

FEHA prohibits an employer from discriminating against any person "in terms of compensation or in terms, conditions, or privileges of employment" on the basis of specified protected classes, including age. Cal. Gov't Code § 12940(a). FEHA cases are evaluated using the three-stage burden-shifting test established by the United States Supreme Court for trying claims of discrimination based on a theory of disparate treatment. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 (1973); *Yanowitz v. L'Oreal USA, Inc.*, 36 Cal.4th 1028, 1042 (2005). "Under the three-part *McDonnell Douglas* test, the plaintiff bears the initial burden of establishing a prima facie case of employment discrimination"; then, once the plaintiff has done so, "the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for its actions." *Earl v. Nielsen Media Research, Inc.*, 658 F.3d 1108, 1112 (9th Cir. 2011) (citing *McDonnell Douglas*, 411 U.S. at 802-804). In the third stage, if the employer "articulates a legitimate reason, the plaintiff must raise a triable issue that the employer's proffered reason is pretext for unlawful discrimination," but the "ultimate burden of persuasion remains with the plaintiff." *Id.*

Where, like here, an employer moves for summary judgment, "the burden is reversed . . . because the defendant who seeks summary judgment bears the initial burden." *Lawler v. Montblanc N. Am., LLC*, 704 F.3d 1235, 1242-43 (9th Cir. 2013) (quoting *Dep't of Fair Employment & Hous. v. Lucent Technologies, Inc.*, 642 F.3d 728, 745 (9th Cir. 2011) (quotation omitted). In other words, "[t]o prevail on summary judgment, [the employer is] required to show either that (1) plaintiff could not establish one of the elements of [the] FEHA claim or (2) there was a legitimate, nondiscriminatory reason for its decision to terminate plaintiff's employment." *Lucent Technologies, Inc.*, 642 F.3d at 745 (quotation omitted) (alterations in original). If successful, the burden shifts back to the employee who must demonstrate either "that the defendant's showing was in fact insufficient or . . . that there was a triable issue of fact material to the defendant's showing." *Id.* at 746 (quotation omitted) (omission in original).

The elements of a prima facie case of disability discrimination are that the plaintiff: (1) suffers from a disability; (2) is otherwise qualified to perform his/her job; and (3) was subjected to adverse employment action because of the disability. *Faust v. Cal. Portland Cement Co.*, 150 Cal. App. 4th 864, 886 (2007); *Brundage v. Hahn*, 57 Cal. App. 4th 228, 236 (1997); *see also Lui v. City & Cty. of S.F.*, 211 Cal. App. 4th 962, 970 (2012) (requiring plaintiff to establish the following for a FEHA claim: "(1) that he or she was discharged because of [her] disability, and (2) that he or she could perform the essential functions of the job with or without accommodation (in the parlance of the [ADA], that he or she is a qualified individual.)").

Plaintiff presents evidence that AMR demoted her to a dispatch position after failing to allow her to return to work as a field paramedic (either as an ambulance paramedic, paramedic field supervisor, or QRV driver), or, alternatively, to promote her to field supervisor position, with accommodations for her injured right hand. Defendant argues that Plaintiff has not made a prima facie case that she is a qualified individual – i.e. that she could perform the essential functions of the job with or without accommodation. Primarily, Defendant argues that Plaintiff's alleged adverse employment action was due not to disability discrimination, but to the fact that she could not perform one of the essential functions of the field paramedic job, in that she could not lift patients on a gurney due to the continuing pain in her right hand.

To establish a prima facie case, the employee must show that she is capable of performing the essential functions of the job with or without reasonable accommodations. *Nealy v. City of Santa Monica*, 234 Cal. App. 4th 359, 375-76 (2015). The Court concludes that no reasonable trier of fact could find that Plaintiff was a qualified individual within the meaning of the statute. The uncontroverted evidence, including the evidence offered by Plaintiff in her workers' compensation claim, establishes that she was not medically cleared to lift patients on a gurney, one of the essential functions of her job, and that all of her proposed accommodations either did not address this issue or impermissibly eliminated the essential lifting function.

Plaintiff alleges that she faced adverse employment action when she was denied the opportunity to return to any field paramedic position. The field paramedic position includes paramedics staffed on an ambulance, a single paramedic staffed on a QRV Unit, and paramedics in leadership roles such as a field supervisor.[9] (DUMF No. 26.) In other words, each of positions that Plaintiff sought to return to after her leave of absence was in a field paramedic position. It is undisputed that one of the essential functions of the field paramedic position is the ability to lift and transport patients, including heavy patients. (DUMF No. 27.) As a paramedic, Plaintiff was involved in lifting patients that weighed over 200 pounds, and was involved in situations where she had to put more than 50 pounds of pressure on her right hand. (DUMF Nos. 35-36.) It is further undisputed that all field paramedics, including paramedics staffed on an ambulance, paramedics staffed on a QRV Unit, and field supervisors, are required to perform all of the physical requirements expected of paramedics. (DUMF No. 34.)

Plaintiff cannot reasonably establish that she was medically cleared to perform this essential function of her job. Plaintiff concedes in her deposition that the January 2014 QME report confirmed that she was not physically able to return to the field, and that she was never medically released to return to the field thereafter. (Hankins Dep. 516:15-517:22; 526:19-527:16.) She further admitted that after her last evaluation, she requested a transfer to dispatch, which was accommodated by AMR. (*Id*.) There can be no reasonable dispute that at the time Plaintiff accepted the transfer to dispatch, and thus faced alleged demotion, she was not authorized by relevant medical staff to perform one of the essential functions of the paramedic job – namely, lifting patients as necessary for medical treatment.

Plaintiff argues that Defendant refused to consider reasonable accommodations and failed to

---

[9] The parties contest why Plaintiff was passed over for a field supervisor position and not given a QRV Unit assignment. Plaintiff contends that she was passed over due to disability discrimination and in retaliation for her workers' compensation case. Defendant argues that she was not given a QRV Unit assignment due to union seniority rules and was not promoted to field supervisor because another individual was more qualified. Because it is undisputed that the physical requirements for all three possible field paramedic positions (ambulance, QRV, and field supervisor) were identical with respect to the lifting requirement, and in light of the Court's determination that Plaintiff was unable to perform one of the essential functions of all three positions, the Court need not take up these issues. Neither accommodation (field supervisor or QRV) would have allowed her to perform all of the essential functions of the field paramedic position.

engage in the interactive process to find such accommodations. Of the accommodations proposed by Plaintiff, only two accommodations directly address her inability to lift patients in light of her disability: (1) use of an electric gurney; (2) providing lift assistance as needed. Both of these requested accommodations essentially ask Defendant to eliminate the essential function of lifting a patient from Plaintiff's job responsibilities. Furthermore, an electric gurney would still not allow Plaintiff to carry a patient up and down stairs, as is required to pass the paramedic's physical assessment test. (Foletta Decl. Ex. P at 9.) The employer need not eliminate essential functions to suit the needs of an employee. *Nealy*, 234 Cal. App. 4th at 375 ("elimination of an essential function is *not* a reasonable accommodation") (emphasis added); *see also Dark v. Curry Cty.*, 451 F.3d 1078, 1089 (9th Cir. 2006) (employer is "not require[d] . . . to exempt an employee from performing essential functions or to reallocate essential functions to other employees."). In short, none of Plaintiff's requested accommodations adequately addressed her inability to perform the essential function of lifting patients as required to perform the field paramedic position in accordance with the job description.

Several other accommodations suggested by Plaintiff relate to easing her ability to write reports – not the essential function of lifting. Even if these accommodations were implemented, they would not have allowed Plaintiff to perform the heavy lifting function. The remaining suggested accommodations, such as intermittent FMLA leave and allowing Plaintiff to return to the operations center to apply a heating pad during flare-ups, would not have assisted Plaintiff when she was in the field providing emergency care to patients, and would not have allowed her to perform the essential function of heavy lifting under those circumstances.[10]

*Nealy* is directly on point. In *Nealy*, a solid waste equipment worker suffered a knee injury that restricted him from lifting, pushing, and pulling large trash bins. 234 Cal. App. 4th at 375. An

---

[10] Plaintiff testified at her deposition that she had frequent "flare-ups," which could occur at any time, and that their onset could not be predicted. (Hankins Dep. 138:15-139:14.) During a flare-up, Plaintiff could experience pain to the point where even touching her hand could cause extreme discomfort. (*Id.*) Therefore, these suggested accommodations would not allow her to perform the essential lifting function during a shift when she was experiencing a "flare-up."

underlying QME report concluded that he was restricted from performing the essential lifting functions of his position. *Id* at 368. Plaintiff disputed the restrictions in the QME report. *Id.* He also sued for disability discrimination, insisting that his employer could have restructured his position so that he did not have to perform heavy lifting or kneeling. *Id.* The court ruled in favor of the employer, concluding that the employer "was not required to eliminate the essential functions from the job to accommodate" the plaintiff. Implicitly, the court also rejected the employee's argument that a material dispute of fact existed as to whether he could still perform the essential functions of his job with the restrictions. The employer's reasonable interpretation of the QME report, unchallenged by any factual data put forth by plaintiff, foreclosed any genuine dispute about whether he could perform the essential functions of the job. *Id.* at 368, 376-77.

Here, Plaintiff was evaluated by a QME physician three times in connection with her workers' compensation claim.[11] In each instance, whether or not the physician concluded that Plaintiff should return to full duty, the QME report indicated that Plaintiff was not medically cleared to perform one or more of the essential functions of the field paramedic position. *See Hanson v. Lucky Stores*, 74 Cal. App. 4th 215, 226-27 (1999) (granting summary judgment in favor of employer where, even though QME report cleared employee to work, the report included restrictions that impacted employee's ability to perform essential functions of his job). In particular, the last QME report, which directly preceded Plaintiff's being transferred to the dispatch position, the Dr. Robson concluded that Plaintiff could not pass the paramedic test requirements, because "she cannot lift 75 pounds using both hands going up the flight of stairs backwards and down the flight of stairs backwards." (Foletta Decl. Ex. P at 5, 9.) Plaintiff does not agree with the restrictions in the QME, but sets forth only conclusory allegations to support her

---

[11] Plaintiff suggests in her opposition, without any foundation, that AMR improperly influenced the QME process. There is no evidence in the record to support such a claim. The record indicates that the QME physician (Dr. Robson) was selected through an elimination process in which a panel of three potential QME physicians were presented, and each party (Plaintiff and AMR's workers' compensation administrator, Sedgwick) was permitted to strike one of the panel members. (Fears Supp. Decl. Exs. GG, II, JJ.)

assertion that she could in fact perform those essential functions. *See Hansen v. United States*, 7 F.3d 137, 138 (9th Cir. 1993) (nonmoving party "cannot rely on conclusory allegations unsupported by factual data to create an issue of material fact"); *Radobenko v. Automated Equipment Corp.*, 520 F.2d 540, 543-44 (9th Cir. 1975) (a party cannot create an issue of material fact by providing a self-serving declaration which contradicts that party's earlier deposition testimony). In Plaintiff's declaration, submitted with her opposition brief, she states that she "believe[s] [she] could have performed my regular duties as a paramedic" and that "my condition could have been easily accommodated, and the accommodation would have allowed me to remain in my paramedic position." (Hankins Decl. ¶ 46.) Such generic contentions do not create a triable issue of fact in the face of medical evidence that Plaintiff could not perform one of the essential functions of her job. *Kennedy*, 952 F.2d at 266.

In any event, the QME reports are relevant not only for the truth of whether Plaintiff could lift the requisite weight, but also for the effects of its conclusions on AMR. Once the QME physician opined that Plaintiff could not safely and reliably lift a patient on a gurney, AMR could not risk the safety of its patients by returning Plaintiff to her paramedic work. At the time, Plaintiff declined to take the physical exam for paramedics. (ECF No. 33, Haeffele Decl. Ex. A at 18:19-24.) Indeed, Plaintiff admitted in a deposition in her workers' compensation case that she was "not comfortable taking the fit for duty test." (*Id.*) She also testified during her deposition that she had not attempted to try to pass the physical fitness test required for paramedics since her transfer. (Hankins Dep. 260:8-10.) In other words, at the time Plaintiff was transferred to dispatch – the alleged adverse employment action – there is no reasonable dispute that she could not perform the essential function of heavy lifting. *Kaplan v. City of N. Las Vegas*, 323 F.3d 1226, 1230-31 (9th Cir. 2003) (affirming summary judgment for defendant municipality where "the uncontroverted medical evidence presented . . . at the time of termination" indicated that could not perform some of the essential functions of his job).

The Court also concludes that no reasonable fact-finder could find that the Plaintiff could have performed the essential function of her position at least in part because of Plaintiff's own representation

in her workers' compensation claim that she was permanently disabled. *See Kennedy*, 90 F.3d at 1480-82 (no reasonable fact-finder could conclude that plaintiff could perform essential functions of position where plaintiff stated on disability forms and doctor testified that plaintiff was totally disabled from working). In her deposition, Plaintiff conceded that she was declared permanently disabled as a result of the injury to her right hand, and that she received a workers' compensation settlement due to the injury. (Hankins Dep. 260:15-261:11.) In this litigation, Plaintiff contends that she believes that she could have performed the regular duties of a paramedic without accommodation from July 2013 to March 2014, and with accommodation for the entire relevant period. (Hankins Decl. ¶ 46. This position is fundamentally at odds with her position in the workers' compensation process, and is not supported by the factual record. *Radobenko*, 520 F.2d 540. The QME reports indicate that she was unable to perform the essential heavy lifting function throughout the period.[12] Plaintiff admitted in a deposition in the workers' compensation case that she was not comfortable taking the physical test required of all paramedics. (Haeffele Decl. Ex. A at 18:19-24.) Plaintiff fails to state a prima facie case for disability discrimination because she does not establish that she was a qualified individual under FEHA.

### 6.    Failure to Accommodate and Failure to Engage in the Interactive Process

In her opposition, Plaintiff argues that there is a material question of fact as to whether Defendant failed to engage in the interactive process and failed to implement reasonable accommodations. Under FEHA, failure to accommodate and failure to engage in the interactive process

---

[12] Plaintiff argues that the QME reports should be disregarded in favor of conclusory opinions from her personal physicians that she could resume full duty. (ECF No. 29 at 10-11.) As an initial matter, AMR was not required, as a matter of law, to accept the position of plaintiff's treating physicians over the QME physician. *See Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 834 (2003) (employers and plan administrators are not required to "accord special weight to the opinions of a claimant's physician" in the face of contrary reliable evidence); *see also Seleine v. Fluor Corp. Long-Term Disability Plan*, 598 F. Supp. 2d 1090, 1102 (C.D. Cal. 2009), ("[t]reating physicians are more or less required to accept the representations of their patients"), *aff'd*, 409 F. App'x 99 (9th Cir. 2010). Second, Plaintiff's position that AMR should have heeded reports indicating she could return to work is simply not credible in light of her position in her workers' compensation claim at the time. In January 2014, Plaintiff was arguing that she was disabled and not physically able to perform her paramedic duties. Plaintiff fought to keep Dr. Robson as the QME physician and argued that his finding should be accepted in support of her claim for disability benefits. (Fears Supp. Ex. JJ.) Third, even the reports suggesting that Plaintiff could return to full duty (both QME reports and other treating physicians' reports) still do not indicate that she was able to perform the essential lifting function. Therefore, Plaintiff offers no evidence to contradict Defendant's claim that she could not perform that function with or without accommodation.

can form the basis for separate causes of action. *Wysinger v. Auto. Club of S. Cal.*, 157 Cal. App. 4th 413, 425 (2007) ("FEHA allows an independent cause of action for employees whose employers fail to engage in the interactive process. This provision does not require proof of the elements required by the ADA."). The undisputed record establishes that AMR engaged in the interactive processs and did not fail to provide reasonable accommodations.

The elements of a failure to accommodate claim are that plaintiff: (1) has a disability; (2) is able to perform the essential functions of her job with a reasonable accommodation; and (3) the employer failed to make such reasonable accommodations. *Latham v. Cambria Co. LLC*, No. SA CV 16-0561-DOC (PLAx), 2017 WL 125013, at *7 (C.D. Cal. Jan. 12, 2017) (citing *Scotch v. Art Inst. of Calif.*, 173 Cal. App. 4th 986, 1009-10 (2009)). "[A]n employer is not required to choose the best accommodation or the specific accommodation the employee seeks." *Wilson v. Cty. of Orange*, 169 Cal. App. 4th 1185, 1194 (2009). "Instead, 'the employer providing the accommodation has the ultimate discretion to choose between effective accommodations, and may choose the less expensive accommodation or the accommodation that is easier for it to provide." *Id.* As explained above, Plaintiff has not set forth a prima facie case that she could perform the functions of her job even with a reasonable accommodation. Therefore, Plaintiff's failure to accommodate claim fails. Moreover, the record indicates that Plaintiff was provided accommodations in the form of light duty assignments and medical leaves of absence over an almost two year period.

"Under FEHA, an employer must engage in a good faith interactive process with the disabled employee to explore the alternatives to accommodate the disability . . . . FEHA requires an informal process with the employee to attempt to identify reasonable accommodations[.]" *Nealy*, 234 Cal. App. 4th at 379. To prevail on a claim for failure to engage in the interactive process, Plaintiff must "identify a reasonable accommodation that would have been available at the time the interactive process occurred." *Id.* As the Court explained above, Plaintiff has not identified an accommodation that would have allowed her to perform the essential lifting functions of her job.

Moreover, the record shows that AMR did engage in the interactive process from the time of her injury through the time that she was declared permanent and stationary and transferred to dispatch. In June 2012, AMR accommodated Plaintiff by placing her on light duty. (PUMF No. 5; Foletta Decl. Ex. E). In September 2012, AMR continued the interactive process, and continued to accommodate Plaintiff's injury, by granting her requests for leave. (Fears Decl. Ex. CC; Foletta Decl. Ex. F). On November 8, 2012, Foletta sent a letter to Plaintiff in which Foletta encouraged Plaintiff to contact her and/or meet with her to engage in the interactive process, and to discuss a potential reasonable accommodation for Plaintiff's injury. (DUMF No. 44; Foletta Decl. Ex. G.) On December 5, 2012, Foletta sent a letter to Plaintiff to continue the interactive process and to encourage Plaintiff to consider other positions within AMR. (DUMF No. 45.) In July 2013, upon receiving Dr. Robson's QME report, AMR again resumed the interactive process by meeting with Plaintiff, and again accommodated Plaintiff's injury by placing her on a medical leave of absence. (DUMF No. 16; Hankins Decl. ¶ 25.) During Plaintiff's leave, AMR continued the interactive process by requesting meetings to discuss alternative positions, and encouraging Plaintiff to review AMR's list of open positions. For example, on October 9, 2013, Theresa Foletta sent another letter to Plaintiff offering to set up a meeting to discuss other potential employment opportunities at AMR. (Foletta Decl. Ex. O.) In early 2014, Plaintiff was deemed "permanent and stationary" and unable to "pass the paramedic test requirements." (Foletta Decl. Ex. P.) Plaintiff submitted an internal transfer request, which AMR granted. (DUMF Nos. 47-49.) The uncontroverted facts show that AMR did engage in the interactive process.

Defendant's motion for summary judgment on the first cause of action brought under FEHA is GRANTED.

**B.**    **Second Cause of Action: Wrongful Demotion in Violation of Public Policy**

Generally, the essential elements of a tort claim for wrongful termination in violation of public policy are: (1) an employer-employee relationship; (2) adverse employment action; (3) the adverse action violated of public policy; and (4) the adverse action caused the plaintiff to suffer

harm. *See, Holmes v. General Dynamics Corp.*, 17 Cal. App. 4th 1418, 1426 n. 8 (1993); *Haney v. Aramark Unif. Servs., Inc.*, 121 Cal. App. 4th 623, 641 (2004). "Violations of FEHA and policies against race, sex, age and disability discrimination support *Tameny* claims." *Walker v. Brand Energy Servs., LLC*, 726 F. Supp. 2d 1091, 1106 (E.D. Cal. 2010) (citing *City of Moorpark v. Superior Court*, 18 Cal. 4th 1143, 1160-61 (1998); *Stevenson v. Superior Court,* 16 Cal. 4th 880, 896 (1997)).

In this case, Plaintiff points to FEHA as the source of California's non-discrimination policy. The Court rejected Plaintiff's FEHA claim, concluding that no reasonable trier of fact could conclude that she is qualified individual under FEHA. Therefore, her wrongful demotion claim fails because she cannot established that she was discriminated against under FEHA in violation of public policy. *See Hanson*, 74 Cal. App. 4th at 229 ("because [plaintiff's] FEHA claim fails, his claim for wrongful termination in violation of public policy fails"); *Hardin v. Wal-Mart Stores, Inc.*, No. CIV-F-08-0617 AWI, 2012 WL 1899201, at *11 (E.D. Cal. May 23, 2012) (same). Defendant's motion for summary judgment as to Plaintiff's claim for wrongful demotion is GRANTED.

## C.  Third Cause of Action: Negligent Supervision

To establish a cause of action for negligent supervision, a plaintiff must prove: (1) the existence of a legal duty of employer to employee to use due care; (2) how the defendant-employer breached that duty; (3) how any breach proximately caused plaintiff's damages; and (4) damages. *Love v. Motion Indus.*, 309 F. Supp. 2d 1128, 1138 (N.D. Cal. 2004)  "A negligent supervision claim based on an employee's FEHA claims, as here, cannot be sustained where the FEHA claims do not survive." *Rodriguez v. Wells Fargo Bank, Inc.*, No. 2:15-CV-01303-KJM-CMK, 2016 WL 4595064, at *9 (E.D. Cal. Sept. 2, 2016) (citing *Jones v. Dep't of Corrections and Rehabilitation*, 152 Cal. App. 4th 1367, 1384 (2007)). Defendants' motion for summary judgment on the negligent supervision claim is GRANTED.

# VI. CONCLUSION AND ORDER

For the reasons set forth above, Defendant AMR's motion for summary judgment (ECF No. 16) is GRANTED as to each cause of action in the Complaint.

Because Individual Defendants Theresa Foletta, Andrea Wisnieski, and Jared Bagwell have never been served, the claims against them are DISMISSED WITHOUT PREJUDICE *sua sponte*, pursuant to Federal Rule of Civil Procedure 4(m). *Johnson v. Meltzer*, 134 F.3d 1393, 1396 (9th Cir. 1998) (summary judgment in favor of unserved defendant inappropriate; claims against defendant unserved after 120 days should be dismissed without prejudice).

The Clerk of Court is DIRECTED to ENTER JUDGMENT in favor of Defendant AMR against Plaintiff and to CLOSE THE CASE.

IT IS SO ORDERED.

Dated:   **January 8, 2018**                    **/s/ Lawrence J. O'Neill**
                                                 UNITED STATES CHIEF DISTRICT JUDGE